**NATIONAL REMEDY CO. v. HYDE, Secretary of the Department of Agriculture, et al.**

No. 5087.

Court of Appeals of District of Columbia.

Argued April 14, 1931.

Decided June 1, 1931.

Abram F. Myers, of Washington, D. C., and Melvin M. Johnson, of Boston, Mass., for appellant.

Leo A. Rover and J. W. Fihelly, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District sustaining a motion to dismiss appellant's bill to enjoin appellees from causing to be made so-called "multiple seizures" of appellant's "B. & M. External Remedy" until such time as the disputed questions of law and fact can be judicially determined in some one of the several libels already filed against the remedy.

The averments of the complaint, stated in narrative form, are substantially as follows: Appellant, the National Remedy Company, is a Massachusetts corporation, with its principal place of business in Boston, in that state. In 1913 it commenced and has since continued to manufacture and sell the above proprietary remedy. This enterprise has prospered to such an extent that the business and good-will now "amount to about the sum of $100,000."

The remedy is not a nostrum, but is of value in the treatment of diseases of the human body, as has been demonstrated by practical experience and also by scientific, laboratory, and clinical research, experimentation, and study. It is intended, as its name signifies, solely and only as an external remedy. "The statements contained in and upon the labels, pamphlets, booklets, circulars and other printed matter have been prepared with care, under scientific direction, and in the utmost of good faith." No representations have been made which appellant and its officers and agents did not believe, and have reason to believe, were and are true, and the medicine never has been, and is not now, adulterated.

The medicine is manufactured in the state of Massachusetts and distributed, not only in that state, but also in interstate commerce to practically all the other states of the Union, to the District of Columbia, and also to foreign countries.

During the year 1919, at the instance of officials of the Department of Agriculture of

the United States, a hearing was had in that Department, at which appellant appeared and presented evidence in support of the claims made in the labels, circulars, pamphlets, and booklets advertising the remedy. The representations made at that time in the labels, books, pamphlets, etc., were substantially the same as those contained in the present literature accompanying the remedy. Appellant being unable at that time to satisfy the Department as to this advertising matter, the Department caused seizures of the remedy to be made under libels filed by the United States in various jurisdictions, and, among other places, in the city of Concord, N. H., in October, 1922. Trial was had before a jury in the District Court of the United States for the District of New Hampshire, at which it was contended by the government that the statements in the advertising matter of appellant regarding the curative and therapeutic effects of its remedy were false and fraudulent. A verdict was rendered for the claimant, appellant here. Judgment was entered on this verdict.

For a period of six consecutive years following the judgment in the New Hampshire District Court appellant continuously sold and distributed its remedy in interstate commerce and in the state of Massachusetts without molestation or criticism. The remedy is now carried in stock and sold by many thousand drug dealers in practically all of the states of the Union and the District of Columbia.

In December, 1928, and January, 1929, the Department of Agriculture caused libels to be brought against appellant's remedy, and seizures thereof to be made in the following cities: New York, N. Y.; Pittsburgh, Pa.; Philadelphia, Pa.; Baltimore, Md.; Oakland, Cal.; Portland, Me.; Miami, Fla.; and elsewhere.

Appellant avers, upon information and belief, that the Secretary of Agriculture, acting through subordinates, is purposing and intending to cause to be instituted and prosecuted libels in numerous other places in the United States, all arising out of and based upon the same general allegations and statements so contained in the circulars, pamphlets, booklets, and cartons of appellant. The several libels already instituted contain identical statements and allege the adulteration and misbranding of appellant's remedy. So far as appellant is advised, the specifications and details of the charges made against appellant's remedy in the several states where the libels have been filed are identical. If the appellees proceed with other seizures in other places, as they have threatened to do, the entire output of appellant's factory and workshop could be seized and held for an indefinite period of time.

The prosecution of libels in various courts in widely separated parts of the United States is unnecessarily oppressive and causing appellant great and unnecessary expense, and is ruining, and will ruin and destroy, its business and good will.

Appellant does not seek to restrain appellees from obtaining, "by the due and proper method provided by law, a decision upon the disputed questions of law and fact involved, but merely wants to prevent irreparable injury to itself arising out of the multiplicity of such libels in widely separated jurisdictions." Appellant has no plain, adequate, and complete remedy at law, and its property, business, and good will will be ruined and destroyed, unless relief is granted herein.

■ The motion to dismiss admits all material facts averred in the bill. American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 103, 23 S. Ct. 33, 47 L. Ed. 90.

Under the Pure Food Law (Act of June 30, 1906, 34 Stat. 768 [21 USCA §§ 1–5, 7–15], as amended by the Act of August 23, 1912, 37 Stat. 416 [21 USCA §§ 9, 10]) it is the duty of the Department of Agriculture (section 4 [section 11]) to make examination of specimens of certain foods and drugs for the purpose of determining whether such articles are adulterated or misbranded within the meaning of the act, and, if it shall appear from such examination that any of such specimens is adulterated or misbranded, to "certify the facts to the proper United States district attorney," who (under section 5 [section 12]), without delay, must institute "appropriate proceedings," by indictment or libel for condemnation, or both, as the facts may warrant. United States v. Morgan, 222 U. S. 274, 280, 32 S. Ct. 81, 56 L. Ed. 198.

■ It is conceded by appellees that the determination of the question whether a given product is adulterated or misbranded is for the court, and that "the function and duty of appellees under section 4 of the Food and Drugs Act is one of investigation. Their findings and conclusions in respect of adulteration and misbranding are merely tentative, and have no binding or obligatory force in themselves. They are not a regulation or an order but are merely the assertion of an opinion that the law has been violated and that proceedings in the name of the United States as directed by statute should be insti-

tuted for this alleged violation." Indeed, such was the conclusion of the court in the Morgan Case. Due process of law required this. Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908.

■ Inasmuch as every district attorney to whom the Department makes certification must institute appropriate proceedings, by indictment or libel for condemnation, or both, it is evident that, even though the findings of the Department are merely administrative, nevertheless, if such certification should be made to the district attorney in every district where a product might be found, the manufacturer would be crippled or ruined long before the final adjudication in the court could be had. Such a result, we think, was not contemplated by Congress, except possibly in unusual cases where drastic action would be necessary for the immediate protection of the public. Is this a case of that character? We think not.

Appellant's remedy is for external use only. Its business was started in 1913. In 1919 the Department caused seizures to be made in various jurisdictions, and at the trial in the United States District Court for the District of New Hampshire the issue whether the advertising matter constituted misbranding was submitted to the jury, and resulted in a verdict and judgment for the defendant (appellant here). We must assume, therefore, that the Department at that time was mistaken, and that the remedy was not misbranded within the meaning of the law. The remedy was the same and the advertising was substantially the same as it is now. The contention then was that the remedy was misbranded. It is now contended that it is not only misbranded but adulterated. If it is adulterated now, it must have been then, yet the analysis at that time failed to disclose adulteration. We may assume, therefore, that the adulteration (if any) is not of such a character as to endanger the public. This assumption is justified, not only because of the failure to detect adulteration in the analysis of 1919, but because for a period of six years after the judgment in the District Court for New Hampshire appellant was unmolested in the conduct of its business.

■ In Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, it was held that, while there is no rule permitting a person to disobey a statute with impunity at least once for the purpose of testing its validity, when such validity can only be determined by judicial determination and construction, a provision in the statute which imposes such severe penalties for disobedience of its provisions as to intimidate the parties affected thereby from resorting to the courts to test its validity practically prohibits those parties from seeking such judicial construction and denies them the equal protection of the law. In the present case, the action and proposed action of the Department would, under the averments of the bill, in effect deprive appellant of its property through the destruction of its business before the issues involved could be determined by the court. The result, therefore, would be little different than as though no provision had been made for judicial review. Such a course of conduct on the part of the Department amounts to arbitrary exercise of power, and is a deprivation of due process of law. It is not, therefore, a suit against the United States. Philadelphia Co. v. Stimson, 223 U. S. 605, 620, 32 S. Ct. 340, 56 L. Ed. 570; Heath & Milligan Co. v. Worst, 207 U. S. 338, 28 S. Ct. 114, 52 L. Ed. 236.

■ A court of equity has jurisdiction to restrain by injunction the institution of a multiplicity of suits under such circumstances as are here present. In Third Ave. R. R. Co. v. Mayor, etc., of N. Y., 54 N. Y. 159 (cited with approval in Cave v. Rudolph, 53 App. D. C. 12, 15, 287 F. 989), the municipal authorities had commenced twenty-seven actions against the railroad company to recover penalties prescribed and imposed by city ordinances for running cars without a license. The railroad company brought an action to restrain the prosecution of more than one until that one could be finally heard and determined. The Court of Appeals ruled that, as the prosecution of all the suits would be unnecessarily oppressive, the interference of a court of equity was properly invoked and exercised. But it is contended that, "if appellees should be enjoined in this case no practical relief would be afforded appellant, since under section 5 of the Act the United States Attorney could proceed against various shipments of the product throughout the country when any health, food, or drug officer or agent of any State, territory, or the District of Columbia should present satisfactory evidence of such violations." This contention is without merit. The relief prayed for is against appellees to prevent them from causing seizures of practically all of appellant's product, and to this relief, under the admitted facts, appellant is entitled.

The decree will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.