PARKE, DAVIS & COMPANY,
Plaintiff-Appellee,

v.

Joseph A. CALIFANO, Secretary of Health, Education and Welfare, Donald Kennedy, Commissioner of Food and Drugs, and the Food and Drug Administration, Defendants-Appellants,

and

United States of America, Appellant.

No. 77–1224.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1977.

Decided Oct. 26, 1977.

Rehearing Denied Nov. 23, 1977.

Donald I. Baker, Carl D. Lawson, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Andrea Limmer, Dept. of Justice, Washington, D. C., Philip Van Dam, U. S. Atty., Detroit, Mich., Richard A. Merrill, Chief Counsel Food & Drug Administration, Dept. of H.E.W., Rockville, Md., for defendants-appellants.

Paul C. Warnke, Thomas R. Spradlin, Clifford, Glass, McIlwain & Finney, Terence J. Fortune, Thomas D. Finney, Washington, D. C., Wolfgang Hoppe, Miller, Canfield,

Paddock & Stone, Detroit, Mich., Charles E. Lents, Parke, Davis & Co., Detroit, Mich., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The question in this case is whether the district court properly enjoined enforcement actions by the Food and Drug Administration (FDA) which were instituted as libels for the seizure of drugs in warehouses of the plaintiff, Parke, Davis & Company (Parke Davis). The appellants contend that the judgment of the district court constitutes an unwarranted interference with a discretionary determination of the FDA commissioner, whereas the appellee argues that the district court properly exercised its authority under the Administrative Procedure Act (APA) to enjoin capricious and arbitrary action by the commissioner. The district court found that the FDA's threat to initiate enforcement actions against Parke Davis under the circumstances of this case was a "final agency action for which there is no other adequate remedy in a court . . ." and subject to judicial review pursuant to 5 U.S.C. § 704. The district court further found that it was necessary in order to prevent an irreparable injury to Parke Davis to grant injunctive relief pending review of the agency action, as authorized by 5 U.S.C. § 705.[1]

The dispute in the case concerns the right of Parke Davis to market as an antitussive (cough inhibitor) a nonprescription, over-the-counter drug product containing diphenhydramine hydrochloride (DPH). In 1948 Parke Davis received FDA approval for the marketing of a product in which the active ingredient is DPH under the label name "Benylin Expectorant." Benylin Expectorant was limited to use under professional supervision; i. e., it could be dispensed only on prescription, and dispensing otherwise would result in the drug being misbranded while held for sale. Under the Food, Drug and Cosmetic Act of 1938 (the Act) a new drug application (NDA) was required to be submitted and approved before any drug could be marketed. "New drug" is the term of art which refers to any drug which requires pre-marketing clearance under the 1938 Act, whether it is being introduced for the first time or has actually been marketed previously. Prior to the adoption of an alternate procedure referred to, infra, the only means of eliminating a prescription-only restriction on the marketing of a given drug was by filing and obtaining approval of a supplemental NDA.

On May 11, 1972 the FDA published a rule entitled "Procedures for Classification of O-T-C Drugs." This rule provided for the establishment of panels of experts to determine whether various over-the-counter (OTC) drugs are generally recognized as safe and effective. Determination with respect to OTC drugs * were to be in the form of "final monographs." Parke Davis construed the May 11, 1972 rule as providing an alternate method of obtaining approval for OTC marketing of drugs previously restricted to prescription sales. Thereafter Parke Davis submitted to the appropriate panel data pertaining to the safety and effectiveness of its Benylin product as an antitussive, and its representatives appeared before the panel. On September 11, 1974 the panel concluded that DPH was safe and effective as an antitussive and thus that products containing DPH were suitable for OTC sale as antitussives. On November 25, 1974 Parke Davis submitted a supplemental NDA seeking approval for

1. § 705. Relief pending review

    When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

* The word "drugs" as used in discussion of the FDA clearance procedures refers to the active ingredients in drug products.

over-the-counter marketing of Benylin under the traditional procedure prescribed in 21 CFR § 310.200, known as a "switch over." Thus, as of November 25, 1974, Parke Davis was proceeding on two separate courses of action with FDA in its attempts to free Benylin from prescription-sale limitations.

On February 28, 1975 Parke Davis wrote FDA requesting approval of OTC sale of Benylin or an administrative indication that OTC sale would not provoke regulatory action. The acting director of a Division of the Bureau of Drugs wrote Parke Davis on March 11, 1975 that FDA was deferring action on its supplemental NDA pending completion of OTC review under the procedures prescribed in the May 11, 1972 rule. One week later the Associate Chief Counsel for Enforcement of FDA wrote Parke Davis in response to its February 28th inquiry. (the Yingling letter). The Yingling letter contained the following language:

> When the FDA began the OTC Review we said that we would institute legal action against new products only where they were fraudulent or represented a health hazard. Since the new product in question (Benylin Cough Syrup) conforms to the recommendations of the OTC Panel considering this particular type of product and has actually been marketed as a prescription preparation (Benylin Expectorant) for a significant period of time, there would be almost no possibility that we would institute legal action at this time. Faced with the limited resources and higher priority issues, the FDA does not intend to institute wholesale enforcement action except to require compliance with published monographs. This is the only position that the Agency can take as it seeks to obtain more efficient uses of its available resources.
>
> You realize, of course, if Benylin Cough Syrup is marketed now, your company assumes the risk that the Agency may not adopt this panel's categorization of diphenhydramine hydrochloride as generally recognized as safe and effective or that the FDA may eventually require different labeling from that which is presently accepted by the panel.

On May 9, 1975 FDA published new procedure and practice regulations in which it adopted a policy of refraining from granting informal exemptions. In September 1975 Parke Davis began marketing Benylin Cough Syrup as an OTC antitussive. On December 4, 1975 the FDA published a notice of proposed rule making which evolved into final regulations published August 4, 1976 at 41 Fed.Reg. 32580. The preamble to the August 4 publication provided that an OTC drug product which contained an active ingredient previously limited to prescription use which is classified by an OTC review panel in category I (generally recognized as safe and effective and not misbranded) "shall be considered a new drug if marketed before the date of publication in the FEDERAL REGISTER of a proposed monograph for the ingredient." The preamble further provided that such a product "may be marketed after the date of publication of a proposed monograph in the FEDERAL REGISTER, but before the effective date of a final monograph, subject to the risk that the commissioner may not accept a panel's recommendation but adopt a different position that could require relabeling, recall, or other regulatory action." The actual regulations, which now appear at 21 CFR § 310.200 and § 330.13 provide that an OTC drug product which contains an active ingredient that was limited on or after May 11, 1972 to prescription use and is under OTC review and has not thereafter been exempted from such limitation,

> . . . which is marketed after the date of publication in the FEDERAL REGISTER of a proposed monograph but prior to the effective date of a final monograph shall be subject to the risk that the Commissioner may not accept the panel's recommendation and may instead adopt a different position that may require relabeling, recall, or other regulatory action. The Commissioner may state such position at any time by notice in the FEDERAL REGISTER, either separately or as part of another document; appropriate regulatory action will commence

immediately and will not await publication of a final monograph. Marketing of such a product with a formulation or labeling not in accord with a proposed monograph or tentative final monograph also may result in regulatory action against the product, the marketer, or both.

On September 8, 1976 Parke Davis was advised by the FDA that its supplemental NDA was not approvable and therefore could not be filed as a supplemental application. On September 9, 1976 the commissioner published a proposed order which contained the monograph developed by the advisory panel classifying DPH as category I. In the preamble to the September 9 order the commissioner stated that the status of DPH as an antitussive would be determined through a supplemental NDA procedure. Parke Davis protested the September 8, 1976 notice that its supplemental NDA was not approvable, following procedures prescribed in 21 CFR § 314.110(d). On November 22, 1976 the appropriate officer at FDA signed a notice of proposed denial of Parke Davis' supplemental NDA which had been filed over protest. Parke Davis was notified that it might request a hearing, and the hearing has now been scheduled. On the same day, November 22, 1976, the commissioner issued an order styled "Notice of Decision on Diphenhydramine as an Antitussive." This order contained his dissent from the panel recommendations on DPH as an antitussive and stated that products containing DPH marketed over the counter would be subject to regulatory action. Both the commissioner's November 22 dissent and the November 22 proposed NDA denial were published in the Federal Register on November 30, 1976.

The present action was filed in the United States District Court for the Eastern District of Michigan on November 29, 1976. Three days prior thereto FDA personnel had been instructed to prepare draft complaints for seizure of Benylin Cough Syrup in 13 districts and letters to the United States attorneys in those districts recommending institution of seizure actions pursuant to 21 U.S.C. § 334. On November 30

and December 1, 1976 complaints were filed and seizures of Benylin Cough Syrup were effected in the Northern District of Texas, the Northern District of Illinois and the District of Minnesota. The district court in the present action issued a temporary restraining order on December 1, 1976 and, after hearings on December 3rd and 8th, issued a preliminary injunction on the latter date. Shortly thereafter the district court filed a memorandum opinion setting forth its reasons for granting the injunction.

The district court found that Parke Davis had pursued two alternative methods in attempting to obtain FDA approval for over-the-counter sale of Benylin and that the Yingling letter constituted "de facto approval" of Parke Davis' proposal that it begin over-the-counter sales of Benylin following issuance of the preliminary monograph classifying DPH as safe and effective. The court further found that Parke Davis continued to sell Benylin over the counter contrary to the enforcement policy of FDA throughout most of 1976 "without provoking FDA enforcement action." Emphasizing Parke Davis' reliance on assurances in the Yingling letter that enforcement action was unlikely in view of the panel determination to place DPH in category I, the district court found that Parke Davis would suffer irreparable injury unless FDA were restrained, and that the action of FDA in threatening enforcement was arbitrary and capricious. The court found specifically that neither the proposed denial of the supplemental NDA nor the published dissent to the panel recommendations was a final decision, but concluded that the threatened enforcement action was agency action which was final since it had a sufficiently direct and immediate effect on Parke Davis and that no other adequate remedy is provided by the Act.

The parties are in sharp disagreement as to what the district court actually held. The appellants contend that the trial court relied on a theory of estoppel, and argue that the doctrine of equitable estoppel may not be applied against the government. They also argue that the only agency action

which the district court reviewed was the determination to utilize the seizure procedure provided by statute in an enforcement action, and contend that the district court has no jurisdiction to review such a determination. Parke Davis argues that the two actions of November 22, 1976 "purported to change the regulatory status of products containing DPH which were lawfully marketed, to subject those products to the threat of immediate regulatory action, and to do so contrary to the recommendations of the expert panel and without first affording interested persons an opportunity for a hearing." It is the assertion of the appellee that under the August 4 regulations, over-the-counter marketing of Benylin was lawful since the monograph had been published and the commissioner had not dissented.

The district court did not find that there had been a change in the status of the product, but appears to have relied upon the conclusion that FDA encouraged Parke Davis to market Benylin over the counter pending a final determination, and acquiesced in such marketing for nearly a year. The action which the district court found to be arbitrary and capricious was the decision of FDA to institute seizure actions pending final determination of the supplemental NDA application of Parke Davis. The district court avoided any finding with respect to the ultimate right of Parke Davis to market Benylin over the counter, but merely preserved its interim right to do so until a final decision is reached.

■ It is established in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), that Congress did not intend, in the enactment of the Food, Drug and Cosmetic Act and its amendments, to preclude all judicial review of final agency actions of the FDA except in the manner set forth in 21 U.S.C. § 371(f)(1).[2] Construing the Food, Drug and Cosmetic Act together with the Administrative Procedure Act, the Court concluded that the action of the FDA in promulgating industry-wide regulations was subject to pre-enforcement review under the "saving clause" of 21 U.S.C. § 371(f)(6).[3] It cannot be argued since *Abbott Laboratories* that district courts are totally without jurisdiction to conduct pre-enforcement review of agency actions. However, such review is limited.

In *Abbott Laboratories* the Supreme Court reaffirmed its earlier holding in *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), and distinguished the two cases. In *Ewing* the plaintiff had been subjected to eleven seizures and libel actions by the FDA within a three-month period. It brought suit to have declared unconstitutional a provision of the Act which authorized the commissioner to file multiple actions for condemnation of drug products upon a finding, without a hearing, of probable cause to believe the drugs were being marketed in violation of the Act. The Court held that due process was satisfied by provisions of the Act which permit the owner of the seized drugs to appear in the seizure action and have a full hearing in accordance with rules for proceedings in admiralty. The Court also noted that the owner of the seized drugs may procure consolidation of all pending seizure actions so that the issues may be decided at one trial. The section referred to in *Ewing*, now 21 U.S.C. § 334(b),[4] also

---

2. 21 U.S.C. § 371(f)(1) provides in part:

**Review of order**

(f)(1) In a case of actual controversy as to the validity of any order under subsection (e) of this section, any person who will be adversely affected by such order if placed in effect may at any time prior to the ninetieth day after such order is issued file a petition with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such order.

3. 21 U.S.C. § 371(f)(6) provides:

(6) The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law.

4. 21 U.S.C. § 334(b) provides:

**Procedure; multiplicity of pending proceedings**

(b) The article, equipment, or other thing proceeded against shall be liable to seizure by process pursuant to the libel, and the procedure in cases under this section shall conform, as nearly as may be, to the proce-

provides for removal of seizure actions to a district near the claimant's principal place of business, and for trial by jury of issues of fact.

The Supreme Court pointed out in *Ewing* that a finding of probable cause to believe that a product is misbranded is of no effect by itself since a libel will not be instituted unless the United States Attorney in the proper district agrees to file it upon a request of the FDA, and stated:

Yet it has never been held that the hand of the government must be stayed until the courts have an opportunity to determine whether the government is justified in instituting suit in the courts. 339 U.S. at 599, 70 S.Ct. at 873.

In *Abbott Laboratories* the Supreme Court stated that the decision in *Ewing* was "clearly correct" and described that decision as follows:

This Court held that the owner could raise his constitutional, statutory, and factual claims in the libel actions themselves, and that the mere finding of probable cause by the Administrator could not be challenged in a separate action. 387 U.S. at 147, 87 S.Ct. at 1514.

When this action was filed in the district court Parke Davis had taken the necessary steps to obtain a final decision on its right to market Benylin over the counter by protesting the ruling that its supplemental NDA was not approvable. A hearing will be held before a final decision is rendered on that application, and the decision will be subject to judicial review by the appropriate court of appeals pursuant to 21 U.S.C. § 371(f)(1).

■ We conclude that the district court had no jurisdiction to review the decision of the FDA to initiate enforcement actions. That decision is indistinguishable from the finding of probable cause which the Supreme Court has held may not be challenged in a separate action. *Ewing, supra.*

■ Parke Davis argues in this court that the district court did more than review the decision of the commissioner to initiate enforcement proceedings. It contends that the district court acted properly under the Administrative Procedure Act to prevent irreparable injury from an arbitrary and capricious action of the commissioner in seizing drug products which were being distributed over the counter as a matter of right following publication of the preliminary monograph without dissent. Parke Davis relies primarily on *Upjohn Co. v. Finch,* 303 F.Supp. 241 (W.D.Mich.1969). In *Upjohn* the FDA revoked a certificate for marketing an antibiotic which had been approved for 12 years. No enforcement action was pending and no hearing was provided prior to revocation. *Upjohn* is distinguishable in at least two respects. First, the drug in question had been approved for sale—this was not in dispute. In the present case Benylin has never received final approval as an over-the-counter drug. The "switch-over" proceedings are still in progress, and a hearing is scheduled. The OTC Review was concluded with a decision adverse to Parke Davis. Secondly, in this case enforcement proceedings were pending

dure in admiralty; except that on demand of either party any issue of fact joined in any such case shall be tried by jury. When libel for condemnation proceedings under this section, involving the same claimant and the same issues of adulteration or misbranding, are pending in two or more jurisdictions, such pending proceedings, upon application of the claimant seasonably made to the court of one such jurisdiction, shall be consolidated for trial by order of such court, and tried in (1) any district selected by the claimant where one of such proceedings is pending; or (2) a district agreed upon by stipulation between the parties. If no order for consolidation is so made within a reasonable time, the

claimant may apply to the court of one such jurisdiction, and such court (after giving the United States attorney for such district reasonable notice and opportunity to be heard) shall by order, unless good cause to the contrary is shown, specify a district of reasonable proximity to the claimant's principal place of business, in which all such pending proceedings shall be consolidated for trial and tried. Such order of consolidation shall not apply so as to require the removal of any case the date for trial of which has been fixed. The court granting such order shall give prompt notification thereof to the other courts having jurisdiction of the cases covered thereby.

in other jurisdictions when the district court issued its injunctive orders. Every issue raised in this case, including the question of whether the OTC Review regulations deprived Parke Davis of due process rights by failing to provide for a hearing and failing to contain guidelines for the commissioner in determining whether to accept or dissent from a panel monograph, could have been raised in the enforcement proceedings.

Thus Parke Davis had an adequate remedy, and the district court erred in holding that it did not. Parke Davis had the same remedy which was available to the distributor in *Ewing*—the statutory right to contest the seizure of its property in the libels, four of which had been filed before the injunction was entered in the present action. Parke Davis did not interpose defenses in any of these actions. These actions could have been consolidated for a single trial in a convenient district and Parke Davis could have raised the issues there which it sought to raise in the present action. In view of the fact that no final decision had been made on the supplemental NDA, "it would be commonplace for the [enforcement] court to await an appropriate administrative declaration before it acted." *Weinberger v. Bentex Pharmaceuticals, Inc.,* 412 U.S. 645, 652, 93 S.Ct. 2488, 2493, 37 L.Ed.2d 235 (1973). Instead of following statutory procedures which the Supreme Court said in *Ewing* were designed to afford relief, Parke Davis elected to seek the extraordinary remedy of injunction. Though the district court had jurisdiction under the Administrative Procedure Act to consider the complaint of Parke Davis, insofar as it questioned the regulations and procedures of the FDA as contrasted with the mere decision to initiate enforcement proceedings, it was an abuse of discretion to enjoin the FDA in the circumstances of this case where pending enforcement actions provided an opportunity for a full hearing before a court. In short, this case is controlled by *Ewing v. Mytinger & Casselberry* rather than *Abbott Laboratories v. Gardner* and *Upjohn Co. v. Finch.*

The judgment of the district court is reversed and the cause is remanded to the district court for dismissal of the complaint. Costs on appeal will be taxed to the appellee.