596 F.2d 568
 PHARMADYNE LABORATORIES, INC., Appellant,
v.
Donald M. KENNEDY, Commissioner of Food and Drug, United
States Department of Health, Education and Welfare, and
Frederick R. Carlson, Food and Drug Administration, District
Director, Newark District Office, and United States Food and
Drug Administration.
 No. 79-1056.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 21, 1979.
Decided March 14, 1979.
 
 Milton A. Bass (argued), Jacob Laufer, Bass, Ullman & Lustigman, New York City, for appellant.
 Charles J. Walsh, Asst. U. S. Atty. (argued), Newark, N. J., and Eugene M. Pfeifer, Associate Counsel for Enforcement, Office of the Gen. Counsel, Food & Drug Administration, Rockville, Md., for appellees.
 Eugene I. Lambert, Covington & Burling, Washington, D. C., for Hoechst-Roussel Pharmaceuticals, Inc., amicus curiae.
 Before SEITZ, Chief Judge, and VAN DUSEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This appeal arises from a January 10, 1979, order[1] of the district court, denying plaintiff a preliminary injunction to restrain defendants from instituting or causing to be instituted any further seizure action against plaintiff's drugs under 21 U.S.C.A. § 334.[2] After consideration of the record, we affirm the district court order, but on a different ground namely, that the district court had no jurisdiction to enjoin the FDA from carrying out multiple seizures.[3]
 
 
 2
 The plaintiff in this case seeks an injunction preventing the FDA from commencing any further seizure actions against its drugs. The record reveals four seizure actions under 21 U.S.C.A. § 334 have already been started by the FDA, alleging Inter alia, that such drugs are adulterated and are new drugs. The plaintiff's position is that this court's decision in United States v. Articles of Drug, Lannett, supra, allows it to market its drugs without prior FDA approval insofar as their new drug status is concerned.[4] Therefore, plaintiff contends the FDA actions are improper and should be enjoined.
 
 
 3
 Aside from the fact that there are several factors that distinguish this case from Lannett, this court concludes that the district court should have denied plaintiff's request for injunctive relief because it lacked jurisdiction to grant that relief under decisions of the Supreme Court of the United States and other United States Courts of Appeal.
 
 
 4
 In Ewing v. Mytinger & Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1949), the Supreme Court held that district courts do not have jurisdiction to enjoin the FDA from commencing and prosecuting multiple seizure actions under 21 U.S.C.A. § 334. Accord, Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966);[5] Parke, Davis & Co. v. Califano, 564 F.2d 1200 (6th Cir. 1977); Natick Paperboard Corp. v. Weinberger, 498 F.2d 125 (1st Cir. 1974). The Ewing Court held that the district court could not enjoin multiple seizures, even where, unlike this case, the district court found that the Government's intent was to harass and injure the manufacturer.[6]
 
 
 5
 The courts that have dealt with this issue have concluded that the only forum Congress provided for a determination of the propriety of FDA seizures was in the seizure action itself.[7] The congressional intent in providing the FDA with the multiple seizure mechanism was to provide for a quick and complete removal of adulterated or misbranded drugs from the market. If the district court could enjoin the seizures, the public would be denied the speedy protection intended by Congress. In Ewing v. Mytinger & Casselberry, supra, the Supreme Court of the United States said at pp. 598 and 601-02, 70 S.Ct. at pp. 872-74:
 
 
 6
 "When the libels are filed the owner has an opportunity to appear as a claimant and to have a full hearing before the court. This hearing, we conclude, satisfies the requirements of due process.
 
 
 7
 "What we do today determines the jurisdiction of the District Court in all the cases in that category. If the court in the present case can halt all multiple seizures but one, so can the court in other cases. The means which Congress provided to protect consumers against the injurious consequences of protracted proceedings would then be seriously impaired. Congress weighed the potential injury to the public from misbranded articles against the injury to the purveyor of the article from a temporary interference with its distribution and decided in favor of the speedy, preventive device of multiple seizures. We would impair or destroy the effectiveness of that device if we sanctioned the interference which a grant of jurisdiction to the District Court would entail. Multiple seizures are the means of protection afforded the public. Consolidation of all the libel suits so that one trial may be had is the relief afforded the distributors of the articles."[8]
 
 
 8
 (Footnotes omitted.)
 
 
 9
 As stated in the Parke, Davis case, Supra (564 F.2d at 1206), the issues raised in this case
 
 
 10
 ". . . could have been raised in the enforcement proceedings. ([9]
 
 
 11
 "Thus Parke Davis had an adequate remedy, and the district court erred in holding that it did not. Parke Davis had the same remedy which was available to the distributor in Ewing the statutory right to contest the seizure of its property in the libels, four of which had been filed before the injunction was entered in the present action. Parke Davis did not interpose defenses in any of these actions. These actions could have been consolidated for a single trial in a convenient district and Parke Davis could have raised the issues there which it sought to raise in the present action. . . . Instead of following statutory procedures which the Supreme Court said in Ewing were designed to afford relief, Parke Davis elected to seek the extraordinary remedy of injunction. Though the district court had jurisdiction under the Administrative Procedure Act to consider the complaint of Parke Davis, insofar as it questioned the regulations and procedures of the FDA as contrasted with the mere decision to initiate enforcement proceedings, it was an abuse of discretion to enjoin the FDA in the circumstances of this case where pending enforcement actions provided an opportunity for a full hearing before a court. In short, this case is controlled by Ewing v. Mytinger & Casselberry rather than Abbott Laboratories v. Gardner and Upjohn Co. v. Finch."
 
 
 12
 As pointed out in Natick, supra (at 127 of 498 F.2d), this case presents an A fortiori situation for application of Ewing because, unlike Ewing, the record here contains evidence that the products involved are harmful to health (see note 8 above). The Natick court used this language at pages 127-28 of 498 F.2d:
 
 
 13
 "(T)he Abbott Laboratories decision, far from undercutting Ewing, expressly reaffirmed this earlier decision as 'quite clearly correct.' 387 U.S. at 147 (87 S.Ct. at 1507). The several distinctions noted by the Court between the promulgation of industry-wide regulations at issue in Abbott Laboratories and the recommendations of seizure proceedings under § 334 need no further elaboration here. See id. (387 U.S.) at 146-148 (87 S.Ct. 1507), 4 Therefore, we conclude that the district court lacked jurisdiction to grant injunctive relief.
 
 
 14
 Therefore, this court will affirm the district court's refusal to grant injunctive relief based on the district court's lack of jurisdiction to grant injunctive relief on the facts in this record.[10] Costs will be taxed against appellant.
 
 
 
 [1]
 The basis for the district court's decision was that, even if the Food and Drug Administration (FDA) had litigated without success a similar issue in United States v. Articles of Drug, Lannett, 585 F.2d 575 (3d Cir. 1978), this case came within the exceptions to the estoppel rationale set forth in Blonder-Tongue v. University Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), which was relied on by plaintiff-appellant. Therefore, the district court held that an injunction preventing the FDA from seizing the plaintiff's drugs would not be within the Blonder-Tongue doctrine. The district court also enumerated other factors in its decision not to exercise its discretion to grant equitable relief (610a-4 to 610a-7)
 
 
 [2]
 21 U.S.C.A. § 334(a)(1) and (b) (1978) provide in part:
 "(1) Any article of . . . drug . . . that is adulterated or misbranded when introduced into or while held for sale (whether or not the first sale) after shipment in interstate commerce . . . shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States . . . within the jurisdiction of which the article is found . . ..
 "(b) The article, equipment, or other thing proceeded against shall be liable to seizure by process pursuant to the libel, . . .. When libel for condemnation proceedings under this section, involving the same claimant and the same issues of adulteration or misbranding, are pending in two or more jurisdictions, such pending proceedings, upon application of the claimant seasonably made to the court of one such jurisdiction, shall be consolidated for trial by order of such court, and tried in (1) any district selected by the claimant where one of such proceedings is pending; or (2) a district agreed upon by stipulation between the parties. If no order for consolidation is so made within a reasonable time, the claimant may apply to the court of one such jurisdiction, and such court (after giving the United States attorney for such district reasonable notice and opportunity to be heard) shall by order, unless good cause to the contrary is shown, specify a district of reasonable proximity to the claimant's principal place of business, in which all such pending proceedings shall be consolidated for trial and tried."
 
 
 [3]
 The district court, in its opinion, used the following language in stating the basis for its jurisdiction to grant injunctive relief:
 "I am unwilling to attribute to the judiciary complete impotence in the face of an arbitrary agency assault by the bringing of multiple seizure actions across the nation in defiance of the settled law of the land."
 The Supreme Court of the United States and this court have repeatedly stated that the federal courts have the duty, even in cases unlike the present, where the issue of jurisdiction is not raised by any party, to inquire into their jurisdiction to act and to deny relief where jurisdiction is lacking. See Philbrook v. Glodgett, 421 U.S. 707, 721, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); In Re Trimble Company, 479 F.2d 103 (3d Cir. 1973); Moore v. Sylvania Electric Products, Inc., 454 F.2d 81 (3d Cir. 1972); Kane v. Ford Motor Company, 450 F.2d 315 (3d Cir. 1971); Shahmoon Industries, Inc. v. Inperato, 338 F.2d 449 (3d Cir. 1964). In the Philbrook case, the Court stated (at page 721 of 421 U.S. at page 1902, of 95 S.Ct.):
 "(W)e have repeatedly held that we must take note of want of jurisdiction in the district court even though neither party has raised the point. (Citing cases.)"
 
 
 [4]
 As noted by the district court, the history of drug regulation by the FDA is available in the following authorities: Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973); Ciba Corp. v. Weinberger, 412 U.S. 640, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973); Weinberger v. Bentex Pharmaceuticals, 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973); USV Pharmaceutical Corp. v. Weinberger, 412 U.S. 655, 93 S.Ct. 2498, 37 L.Ed.2d 244 (1973); United States v. Articles of Drug (Lannett) supra; Hoffman-LaRoche, Inc. v. Weinberger, 425 F.Supp. 890 (D.D.C.1975); Note, "Drug Efficacy and the 1962 Drug Amendments," 60 Geo.L.Rev. 85 (1971); Note, "The Drug Amendments of 1962: How Much Regulation?" 18 Rutgers L.Rev. 101 (1963)
 
 
 [5]
 In this case the Supreme Court reaffirmed Ewing, using this language at 147-48 of 387 U.S., at 1514 of 87 S.Ct.:
 "This Court held that the owner could raise his constitutional, statutory, and factual claims in the libel actions themselves, and that the mere finding of probable cause by the Administrator could not be challenged in a separate action. That decision was quite clearly correct, . . ..
 "As the Court there noted, like a determination by a grand jury that there is probable cause to proceed against an accused, it is a finding which only has vitality once a proceeding is commenced, at which time appropriate challenges can be made. The Court also noted that the unique type of relief sought by the drug manufacturer was inconsistent with the policy of the Act favoring speedy action against goods in circulation that are believed on probable cause to be adulterated. Also, such relief was not specifically granted by the Act, which did provide another type of relief in the form of consolidation of multiple libel actions in a convenient venue. 339 U.S., at 602, 70 S.Ct. at 870.
 "The drug manufacturer in Ewing was quite obviously seeking an unheard-of form of relief which, if allowed, would have permitted interference in the early stages of an administrative determination as to specific facts, and would have prevented the regular operation of the seizure procedures established by the Act."
 
 
 [6]
 We note that in this case the trial court did not find, as it did in Ewing, that the FDA's actions were arbitrary and capricious and accompanied by an intent to harass and injure the manufacturer
 Pharmadyne contends that Ewing is not applicable because it asserts that this court, in a previous decision (Lannett ), has decided the only legal and factual issues involved in the seizure action which are pertinent to this case. The flaw in this argument, however, is that the factual and legal issues presented by Pharmadyne's actions are not clearly identical to those which we decided in Lannett. Here, the district court observed that the FDA adduced evidence that the inactive and perhaps the active ingredients used in Pharmadyne's formulation are not identical to those used in the approved drug; and that these differences in the total formulation could create a health risk (see, for example, note 8 below). We are satisfied that the legal and factual issues raised by this case were not decided in Lannett, and we need not decide whether Ewing would be applicable if this court had in a prior adjudication decided the exact same issues raised by the present seizures.
 
 
 [7]
 Cases such as Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966), and Upjohn Company v. Finch, 303 F.Supp. 241 (W.D.Mich.1969), are not applicable to this record because the FDA had not initiated any seizure actions at the time the suits were brought. If a controversy is otherwise ripe, a district court may have jurisdiction over FDA activities and threatened activities before the FDA actually initiated seizures. However, when seizure actions are pending, the statute provides an exclusive forum in which all constitutional, statutory and factual issues can be raised. That forum is the seizure proceeding
 Also distinguishable is National Remedy Co. v. Hyde, 60 App.D.C. 252, 50 F.2d 1066 (D.C. Cir. 1941), which was relied on by the plaintiff at oral argument. National Remedy arose prior to the passage of the present Drug Act in 1938 and prior to the Supreme Court decision in Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870 (1949). Furthermore, in this case, as opposed to National Remedy, there is a procedure by which Pharmadyne could consolidate the seizure actions and there was no prior case between the same parties involving the same product.
 
 
 [8]
 The district court noted the record evidence that plaintiff's
 "substitution of dicalcium phosphate for lactose in Pharmadyne's furosemide product makes plaintiff's product a potential hazard in the marketplace in the absence of further proof of In vivo bioavailability. Dr. Cabana opines that plaintiff's excipient is 'very likely to interfere with the dissolution of the product in the intestine thereby rendering the product ineffective at the prescribed dosage of Lasix.' Dr. Cabana points out that Lasix is used for chronic illnesses E. g., congestive heart failure, the edema secondary to cirrhosis and highlights the problems that would result if a patient titrated to Lasix is switched to a supposedly identical drug which, however, is not a therapeutic equivalent. Dr. Cabana also refers to the dangers of 'dumping' of the contents of a sustained release medication." (610a-9)
 Such potential dangers in the products plaintiff seeks to market without a judicial hearing in the 21 U.S.C.A. § 334 libel proceeding (see, for example, Complaints at 49a-57a) make the instant case an A fortiori case for an application of the decision in Ewing, which involved a Nutritional Food Supplement concentrate. The Court in Ewing, supra, said at page 596 of 339 U.S. at page 871 of 70 S.Ct:
 "There is no claim that the ingredients of the preparation are harmful or dangerous to health. The sole claim is that the labeling was, to use the statutory words, 'misleading to the injury or damage of the purchaser or consumer' and that therefore the preparation was 'misbranded' when introduced into interstate commerce."
 
 
 [9]
 The four seizure actions under 21 U.S.C.A. § 334 which can be consolidated into one action under 21 U.S.C.A. § 334(b) are the enforcement proceedings in this case. See page 3 above
 " Similarly, the Court has repeatedly referred to the continuing vitality of Ewing, because of the exceptional public policy it involves, in all the major due process decisions of recent years. (Citing eight decisions of the Supreme Court of the United States.)"
 
 
 [10]
 Pursuant to 21 U.S.C.A. § 334(b), on remand the plaintiff may consolidate all the libel proceedings against it in one case and raise all the defenses it has at its disposal in that case, including the ones raised before this court