PARKE, DAVIS & COMPANY,
Plaintiff-Appellee,

v.

Joseph A. CALIFANO, Secretary of
Health, Education and Welfare et
al., Defendants-Appellants.

No. 78–1140.

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1980.

Decided and Filed June 16, 1980.

James K. Robinson, U.S. Atty., Detroit, Mich., Leonard Schaitman, Barbara Babcock, Michael Jay Singer, U.S. Dept. of Justice, App. Section, Civil Division, Washington, D. C., Richard M. Cooper, Chief Counsel, Food and Drug Administration, Rockville, Md., for defendants-appellants.

Wolfgang Hoppe, Miller, Canfield, Paddock & Stans, Charles E. Lents, Detroit, Mich., Thomas Richard Spradlin, Clifford, Glass, McIlwain & Finney, Washington, D. C., for plaintiff-appellee.

Before LIVELY and BROWN, Circuit Judges, and PECK, Senior Circuit Judge.

LIVELY, Circuit Judge.

■ This is an appeal from summary judgment for the plaintiff in an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976). The general purpose of FOIA is to open the records of government agencies to public scrutiny. However, Congress provided for the exclusion of certain types of records from the provisions of the Act by creating seven "exemptions." This case concerns the fifth exemption.

I.

Parke, Davis & Company (Parke Davis) initiated a request for records of the Food and Drug Administration (FDA), a component agency of the Department of Health, Education and Welfare. The request, made in accordance with a provision of FOIA[1] and applicable regulations, specified a large number of documents for disclosure. FDA eventually responded by furnishing some of the documents, advising that others could not be found, and denying the request as to portions or all of other designated documents on the ground that the withheld materials are exempt from disclosure under 5 U.S.C. § 552(b)(5) (Exemption 5).[2]

---

1. 5 U.S.C. § 552(a)(3)

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

2. 5 U.S.C. § 552(b)(5)

(b) This section does not apply to matters that are—

\*   \*   \*   \*   \*   \*

(5) inter-agency or intra-agency memorandums or letters which would not be available

After exhausting its administrative remedies, Parke Davis filed the present action pursuant to 5 U.S.C. § 552(a)(4)(B), which provides:

> (B) On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

When required pleadings had been filed, both parties made motions for summary judgment. The motion of FDA was accompanied by affidavits in which the government's position was stated. In brief, the affidavits asserted that the documents and portions of documents withheld by FDA "do not contain any factual data which is not revealed elsewhere . . ." and "were generated as part of two deliberative processes." The affidavits also stated that "[t]he disclosure of these documents would impair the deliberative process by inhibiting frank expressions of views and complete and candid advice."

The district court held a hearing on the cross-motions and received 22 disputed documents for *in camera* inspection. Shortly thereafter the court entered an order requiring disclosure of seventeen documents and denying disclosure of five upon a finding that they fell within Exemption 5. Parke Davis did not appeal the denial and the only issues before us relate to the 17 documents which were ordered disclosed. Of these, one had been withheld by FDA in

by law to a party other than an agency in litigation with the agency;

Section 552(b) contains the further provision:

its entirety and deletions had been made from the texts of the other 16.

## II.

We begin our consideration of this case by looking at the administrative processes of FDA which generated the documents in dispute. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138–44, 95 S.Ct. 1504, 1510–13, 44 L.Ed.2d 29 (1975); *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 172–79, 95 S.Ct. 1491, 1494–97, 44 L.Ed.2d 57 (1975). The present action arose out of Parke Davis's long-standing effort to obtain certification from FDA for over-the-counter (OTC) sales of its product "Benylin" which is presently approved only for prescription sales. The procedures required for OTC approval are described in this court's opinion in an appeal from a district court judgment in a previous action between the parties. *See Parke, Davis & Co. v. Califano*, 564 F.2d 1200 (6th Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1522, 55 L.Ed.2d 539 (1978) (*Parke Davis I*). As we pointed out in *Parke Davis I*, there were two available routes by which Parke Davis sought OTC approval for Benylin. One of these procedures, described in 21 C.F.R. § 330.100, provides for appointment of advisory review panels of qualified experts to advise the commissioner of FDA "on the promulgation of monographs establishing conditions under which OTC drugs are generally recognized as safe and effective and not misbranded." Parke Davis submitted a proposal to the appropriate review panel concerned with diphenhydramine hydrochloride (DPH), the active ingredient in Benylin. This panel eventually concluded that DPH is safe and effective as an antitussive (cough inhibitor) and it issued a "monograph" to that effect. As we note later, the commissioner "dissented" from this monograph and several of the FOIA requests involved in this appeal concern the advisory review panel monograph.

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

Most of the documents which the district court ordered disclosed were generated in Parke Davis's efforts to obtain OTC approval of Benylin under the "traditional" or "switch over" procedure prescribed in 21 C.F.R. § 310.200. Section 310.200(b) provides, "[a]ny interested person may file a petition seeking such exemption [from prescription limitations], stating reasonable grounds therefor, which petition may be in the form of a supplement to an approved new-drug application." Parke Davis petitioned by means of a "supplemental new drug application" for removal of the prescription-only restriction from FDA's previous approval of a new drug application (NDA) for Benylin.

The supplemental new drug application was subject to the provisions of law relating to approval for marketing new drugs. Section 505 of the Food, Drug and Cosmetic Act of 1938, 21 U.S.C. § 355, sets forth the procedure for obtaining this approval. After an application has been filed, the Secretary of HEW is required either to approve it or give notice to the applicant of an opportunity for a hearing on the question whether the application is to be approved. One action or the other must be taken by the Secretary within 180 days after the filing of the application. After an expedited hearing the Secretary must issue an order approving the application unless he finds it deficient under any of six criteria listed in 21 U.S.C. § 355(d):

> If the Secretary finds, after due notice to the applicant in accordance with subsection (c) of this section and giving him an opportunity for a hearing, in accordance with said subsection, that (1) the investigations, reports of which are required to be submitted to the Secretary pursuant to subsection (b) of this section, do not include adequate tests by all methods reasonably applicable to show whether or not such drug is safe for use under the conditions prescribed, recommended, or suggested in the proposed labeling thereof; (2) the results of such tests show that such drug is unsafe for use under such conditions or do not show that such drug is safe for use under such condi-

tions; (3) the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug are inadequate to preserve its identity, strength, quality, and purity; (4) upon the basis of the information submitted to him as part of the application, or upon the basis of any other information before him with respect to such drug, he has insufficient information to determine whether such drug is safe for use under such conditions; or (5) evaluated on the basis of the information submitted to him as part of the application and any other information before him with respect to such drug, there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof; or (6) based on a fair evaluation of all material facts, such labeling is false or misleading in any particular; he shall issue an order refusing to approve the application.

"Substantial evidence" as used in § 355(d) is defined as follows:

> [T]he term "substantial evidence" means evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof.

FDA has adopted regulations related to administrative actions permitted on new drug applications. 21 C.F.R. §§ 314.100 et seq. In addition to requiring approval if none of the grounds specified in 21 U.S.C. § 355(d) is present, the regulations permit the commissioner of FDA to refuse to accept an application if stated requirements are not met. The regulations contain a statement of "principles [which] have been developed over a period of years and are

recognized by the scientific community as the essentials of adequate and well-controlled clinical investigations." These principles, which are then listed, "provide the basis for the determination whether there is 'substantial evidence' to support the claims of effectiveness for 'new drugs' . . . ." 21 C.F.R. § 314.111(a)(5)(ii). The enumerated principles or criteria relate to the dependability of the investigations relied upon by the applicant in claiming effectiveness for the new drug under consideration.

Two actions by FDA on November 22, 1976 had the effect of denying OTC approval of Benylin. On that date the commissioner gave notice of his dissent from the advisory panel recommendation that DPH be approved for OTC sales as an antitussive and signed a notice of intent to deny Parke Davis's supplemental NDA. The record does not disclose any subsequent proceedings with respect to the advisory panel report. However, by protesting the denial of its NDA, Parke Davis became entitled to a hearing before an administrative law judge. Prior to the scheduled hearing, Parke Davis objected that the administrative record was incomplete and requested that the same documents subsequently specified in its FOIA request be made available as part of that record. The administrative law judge denied the request to supplement the administrative record, suggesting that the proper procedure for seeking disclosure of the documents was to initiate a FOIA request.

### III.

### A.

█ It is much easier to state the purpose of Exemption 5 than to apply it. The statutory language appears to shield from compulsory disclosure those inter-agency and intra-agency documents which a private party in litigation with the agency would not be able to reach by discovery. However, as the Supreme Court has recognized, discovery rules are a subject of uncertainty and disagreement and "at best, the discovery rules can only be applied under Exemption 5 by way of rough analo-

gies." *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). Nevertheless, it is clear that Exemption 5 preserves to the agencies such recognized evidentiary privileges as the attorney-client privilege, the attorney work-product privilege and the executive "deliberative process" privilege. *Coastal States Gas Corp. v. U. S. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980). FDA bases its claim in this case on the deliberative process privilege. The reason for shielding the deliberative process is the necessity to foster "the policy of open, frank discussion between subordinate and chief concerning administrative action." *Mink, supra*, 410 U.S. at 87 (1973), *quoting Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (Ct.Cl.1958) (Reed, J.). While it shields materials which truly reflect the deliberative or policy making processes of an agency, Exemption 5 does not protect "purely factual, investigative" materials from compelled disclosure. *Mink, supra*, 410 U.S. at 89, 93 S.Ct. at 836. However, where factual materials are "inextricably intertwined with policymaking processes" they are within the reach of Exemption 5. *Id.* at 92, 93 S.Ct. at 838.

### B.

On appeal FDA maintains that all 17 disputed documents contain opinions reached during the internal deliberative process which culminated in FDA's decision to deny approval for OTC marketing of Benylin. Specifically, it is contended that the documents reflect the decision making process by which FDA determined whether the data submitted with the supplemental NDA satisfied the requirements of 21 C.F.R. § 314.111. It is emphasized that all the documents are "predecisional," and it is claimed that disclosure would seriously inhibit the free exchange of ideas within FDA and interfere with the evaluation of scientific data submitted with NDAs pursuant to 21 U.S.C. § 355.

Parke Davis argues that the documents are not concerned with the policy making processes of FDA, but are scholarly, scien-

tific evaluations of factual materials. The fact that the documents are "predecisional" is not controlling according to Parke Davis; there must be a showing that their disclosure would have an adverse effect on the decision making process. Parke Davis emphasizes the difference between subjective, often spontaneous, opinions generated in the give-and-take of decision making and the objective evaluations of scientists engaged in interpreting technical and scientific data. Parke Davis contends that medical experts and other scientists would not be inhibited from expressing their opinions by the knowledge that those opinions would be subject to public disclosure.

### IV.

■ An examination of the documents submitted to the district court by FDA reveals that all are predecisional—that is, they came into being before the commissioner made his final decision with respect to Benylin as an OTC antitussive. However, this fact alone is not determinative. In order to come within Exemption 5 a predecisional document must be a part of the deliberative process. *Mead Data v. U.S. Department of Air Force*, 566 F.2d 242, 257 (D.C.Cir.1977). Nor is it possible to hold that all factual material is subject to disclosure while all advisory material, containing opinions and recommendations, is covered by Exemption 5. *Id.* at 256. The documents in dispute here do contain opinions of medically and scientifically trained persons. However, unless the opinion of an expert somehow reflects the deliberative process of decision or policy making, the opinion as such does not come within the exemption. *Moore-McCormack Lines v. I.T.O. Corp. of Baltimore*, 508 F.2d 945, 947 (4th Cir. 1974); *cf., Tennessean Newspapers, Inc. v. Federal Housing Administration*, 464 F.2d 657 (6th Cir. 1972).

The excised portions of those documents partially withheld and portions of the one totally withheld appear to contain opinions which may relate to recommendations. However, this is not completely clear even with respect to specific issues, and with two

exceptions there is no indication that they relate to general policy decisions of the agency. The claim of exemption in the affidavits filed by the defendants is couched in conclusory terms: "The documents and portions of documents [withheld] . . . were generated and are a part of two deliberative processes . . . . The disclosure of these documents would impair the deliberative process by inhibiting frank expression of views and complete and candid advice." Similar conclusory statements appear in the indices of documents filed with FDA affidavits. In *Tennessean Newspapers, Inc. v. Federal Housing Administration, supra*, this court noted the basic intent of Congress in enacting FOIA to require disclosure in the absence of a showing that one of the exemptions applies. 464 F.2d at 661. The statements in the affidavits and indices are not sufficient to bring the documents within Exemption 5.

The fact that a document contains advice or recommendations from a subordinate is not enough. The district court must know how each document fits into the deliberative process, and whether it is an essential element of that process or possibly a peripheral item which just "beefs up" a position with cumulative materials. As all courts and commentators have agreed, the overwhelming thrust of FOIA is toward complete disclosure. We require specificity and detail in support of an Exemption 5 claim. Earlier in this opinion we attempted to set forth the drug approval procedures of FDA. However, we were limited to the procedures set forth in the statute and regulations. FDA has not filed a handbook or a manual or statement of internal operating procedures. Neither the documents nor the affidavits identify the precise responsibilities or the exact role in the approval process of the authors or addressees of the letters and memoranda. *See Coastal States Gas Corp. v. U. S. Department of Energy, supra*, 617 F.2d at 868. The ultimate burden which FDA must carry is to show that information of the type it seeks to withhold would not flow freely within the agency unless protected from public disclosure. *Mead Data Central, Inc. v. U. S. Department of Air Force, supra*, 566 F.2d at 256.

Except with respect to two disputed documents, we conclude that FDA failed to carry its burden of proof. 5 U.S.C. § 522(a)(4)(B). The district court had only the generalized claims of exemption and the documents submitted *in camera* from which to make its decision. Without detailed explanations of how they qualify for an exemption, the disputed documents themselves (except for the two hereafter noted) do not establish a need for denying public disclosure. *See Mead Data Central, Inc. v. U. S. Department of Air Force, supra,* 566 F.2d at 261–62. The deleted material in document 1f clearly refers to a policy decision by the director of the Bureau of Drugs and is covered by Exemption 5. The deleted material in document 1ab is a direct recommendation for action by the director of the Bureau of Drugs to the commissioner of FDA, and is covered by Exemption 5. With these two exceptions, on the record before us, we cannot conclude that the district court erred in ordering disclosure.

### V.

FDA contends that the district court erred as a matter of law by treating this FOIA action as a substitute for administrative discovery. This argument is based on several comments of Judge Feikens during the hearing and the opening sentence in his order of disclosure. However, at the conclusion of the hearing, Judge Feikens stated on the record that his comments during the hearing reflected only his "tentative thoughts." The reference to the administrative proceedings in the order of disclosure does no more than identify the setting in which the FOIA dispute arose.

It is settled that the rights of a FOIA requester are neither increased nor decreased by the fact that the requester has an interest in the documents which is greater than that of the general public. *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 143, n. 10, 95 S.Ct. at 1513, n. 10; *Sterling Drug, Inc. v. F. T. C.,* 450 F.2d 698, 704 (D.C.Cir.1971). The district court did not overlook this precept in deciding the present case.

The judgment of the district court is affirmed, except insofar as it orders full disclosure of documents 1f and 1ab in their entirety. To this extent the judgment is vacated with directions to enter an order permitting disclosure of these documents with the material indicated in the copies submitted *in camera* deleted. No costs allowed on appeal.