635 F.2d 261
 106 L.R.R.M. (BNA) 2107, 90 Lab.Cas. P 12,492
 Robert D. SHAFFER, Leo A. Burke, Jean Burke, Admstx. Est.
Leo Burke, deceased, Ronald D. Bicker, H. Kneff Means, W.
Clair Houk, Clifford G. Campbell, Jr., John R. Barron, H.
Clair Walker, Charles H. McKeough, Russell L. Schooley,
William A. Gierlach, Jr., Kimberly O. Parrott, Fred M.
Sheffler, Charles W. Cameron, Daniel Nagy, Jr., Walter G.
Romano, and Donald W. Boylan International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and Helpers of America,
Local 261, Interv. Plf.
v.
MITCHELL TRANSPORT, INC., a corporation, Local No. 261 of
the International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, an unincorporated labor
organization, Mitchell Transport, Inc., Appellant.
 No. 80-1475.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 7, 1980.
Decided Dec. 23, 1980.
Rehearing and Rehearing En Banc Denied Jan. 19, 1980.
 
 John J. McAleese, Jr. (argued), Cunniff, Bray & McAleese, Bala Cynwyd, Pa., for appellant.
 Edward H. Walter, Jubelirer, Pass & Intrieri, Pittsburgh, Pa., for appellee, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 261.
 Donald T. O'Connor (argued), Thomas L. VanKirk and Martha A. Zatezalo, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, P. C., Pittsburgh, Pa., for individual appellees, Robert D. Shaffer, et al.
 Before ALDISERT, VAN DUSEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Senior Circuit Judge.
 
 
 1
 This case involves a dispute between plaintiffs, former employees of Martin Trucking, Inc. ("Martin"), and defendant, Mitchell Transport, Inc. ("Mitchell"), a corporation which took over Martin's cement hauling business. Plaintiffs seek to enforce an arbitration award, issued in 1974 while Martin was their employer, against Mitchell. In an unpublished opinion, the district court[1] held that the underlying dispute was not arbitrable and that Mitchell, as Martin's successor, was bound by the arbitration award issued against Martin. The district court awarded damages totaling $172,833.12 and costs. Because we conclude the district court was without jurisdiction to adjudicate plaintiffs' claims, we vacate the district court's judgment and remand with instructions to stay further action in the suit until the parties have had an opportunity to submit the dispute to arbitration under the terms of the collective bargaining agreement.
 
 Facts
 
 2
 Defendant Mitchell is a corporation registered to do business in Pennsylvania. Since January 2, 1975, Mitchell has hauled all the cement produced by the Bessemer Cement Co. ("Bessemer"). Mitchell uses 70 trucks, all of which it owns, to haul the cement. Prior to January 2, 1975, two trucking companies serviced the Bessemer facility, each of which hauled approximately half of the cement produced. Martin was one of these two companies. Martin used 40 trucks in its cement hauling business, 19 of which it owned, 21 of which it leased from the individual plaintiffs.
 
 
 3
 Plaintiffs include 17 former employees of Martin and their union. The 17 individual plaintiffs own trucks which they drove to haul cement for Martin. As "owner-drivers," they received rental income for leasing their trucks to Martin and, in addition, received wages for operating those trucks. Teamsters Local 261 ("Union"), also a plaintiff, was the exclusive collective bargaining representative for both the regular drivers, who operated the company-owned trucks, and the owner-drivers.
 
 
 4
 The Union and Martin entered into a collective bargaining agreement, effective from July 9, 1973, through June 30, 1976. This agreement established, among other terms, the wages for all drivers, rental incomes for the owner-drivers, and a four-step grievance procedure which culminated in binding arbitration. Six pages of the agreement dealt with the owner-drivers.
 
 
 5
 On January 27, 1974, the Joint Area Committee issued an order ("JAC 1108") under step 4 of the established grievance procedure. JAC 1108 ordered Martin to comply with the Additional Company Equipment ("ACE") agreement, an agreement separate from, but supplemental to, the original collective bargaining contract. The ACE agreement, in part, provides:
 
 
 6
 "In order to protect the owner-drivers, the Employer shall be restricted to the following limitations on increasing the number of pieces of company equipment (trucks): (1) up to 5 pieces on or after June 1, 1974; (2) up to 5 additional pieces on or after June 1, 1975."
 
 
 7
 Martin thereby was limited to the use of 24 company-owned trucks from June 1, 1974, to June 1, 1975, and 29 such trucks from June 1, 1975, until the expiration of the collective bargaining contract on June 30, 1976. Martin had to lease all other trucks it needed to haul cement from the owner-drivers. This arrangement gave the owner-drivers some assurance that their trucks would be leased and they would receive rental income. JAC 1108 also provided that it "shall be binding with no appeal" and that failure to abide by the order "shall give the other party the immediate right to all legal and economic recourse."
 
 
 8
 Before taking over the hauling operations, Mitchell entered into a lengthy agreement of sale with Martin. Mitchell agreed, inter alia, to buy Martin's authorities to haul cement, and "to assume the terms and obligations of (Martin) under the Collective Bargaining Agreements...."
 
 
 9
 Mitchell met with the Union on December 30, 1974, the last working day before Mitchell began hauling the Bessemer cement. At the meeting, Mitchell's representative, both orally and in writing, gave notice to the Union that Mitchell would not lease any trucks from the owner-drivers and that all of the cement hauling would be done in 70 new trucks recently purchased by Mitchell. He offered to hire all drivers, including the plaintiff owner-drivers, and then signed the Martin-Union collective bargaining agreement.
 
 
 10
 From January 2, 1975, when Mitchell took over, until the expiration of the collective bargaining contract on June 30, 1976, Mitchell consistently refused to lease any of the owner-drivers' trucks. Despite this, some of the plaintiff owner-drivers accepted the offer of employment as drivers, thereby leaving their trucks idle. Other of the plaintiffs refused to work and still others found work elsewhere.
 
 
 11
 Plaintiffs, through the Union, first initiated a grievance procedure to protest Mitchell's failure to abide by JAC 1108 and lease their trucks. Shortly thereafter, plaintiffs, as individuals, filed this suit in the district court to enforce the JAC 1108 order against Mitchell.[2]
 
 Jurisdiction
 
 12
 We first address the issue of the district court's jurisdiction to address the merits of this complaint.[3] The district court realized that if the collective bargaining agreement provided for resolution of the dispute through arbitration, the court had no jurisdiction to address the merits, Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (hereinafter The Steelworkers Trilogy ), and would have to stay its proceedings. 9 U.S.C. § 3 (1976).[4] Whether a dispute is arbitrable pursuant to a collective bargaining agreement is a question committed to the court. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1961); Westinghouse Broadcasting v. Local 804, Intern. Alliance, 616 F.2d 97, 98 (3d Cir. 1980); Bechtel Corp. v. Local 215, Laborers' Int'l Union, 544 F.2d 1207, 1212 (3d Cir. 1976). The district court held, over Mitchell's objection,[5] that the present dispute was not arbitrable.
 
 
 13
 We hold that the dispute is arbitrable under the terms of the collective bargaining agreement. The district court was therefore without jurisdiction to address the merits of the complaint and should have stayed its proceedings. See note 4.
 
 
 14
 While recognizing that the case presents novel issues for consideration, we have concluded that the district court (1) failed to recognize that the dispute between Mitchell and the owner-drivers is not the same as the earlier dispute resolved by JAC 1108, (2) overlooked the strong federal policy favoring the arbitration of labor disputes, and (3) improperly relied on the successorship line of cases.
 
 
 15
 (1) Present Dispute Differs From Earlier Dispute
 
 
 16
 The district court enforced JAC 1108 against Mitchell under the mistaken belief that the present dispute is the same dispute previously arbitrated and resolved by that award. The issue, as the district court understood it, was how many company-owned trucks could the employer use before it had to lease trucks from the owner-drivers. That is, of course, the underlying issue.[6] But another issue is present here: Did Mitchell agree to be bound by JAC 1108, an award springing from the collective bargaining agreement it signed? This issue must be resolved before the order can be enforced against Mitchell.
 
 
 17
 Neither party contends it is not bound by the broad arbitration clause incorporated in Article VIII of the collective bargaining contract.[7] A disagreement over what constitutes the collective bargaining agreement is a dispute arising out of that agreement. The arbitrator must first determine whether Mitchell agreed to be bound by JAC 1108, an award issued against Martin, before that award can be enforced against Mitchell. We note that if the arbitrator finds that Mitchell is bound by JAC 1108, he should resolve the whole dispute and determine damages.[8]
 
 
 18
 (2) Federal Policy Favors Arbitration of Labor Disputes
 
 
 19
 Our decision furthers the well established federal policy favoring the resolution of labor disputes through arbitration. Steelworkers Trilogy, supra; Teamsters Local Union No. 30 v. Helms Express, Inc., 591 F.2d 211 (3d Cir.), cert. denied, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979). This policy is based on the principle that an arbitrator, rather than a judge, can best resolve the dispute underlying plaintiffs' complaint. An arbitrator offers greater experience and competence in resolving the particular labor dispute for which he was chosen. Steelworkers Trilogy, 363 U.S. at 582, 80 S.Ct. at 1352. The arbitrator is "chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as a criteria for judgment." Id. The parties should, therefore, more readily accept the determination of the arbitrator rather than that of the court. The prior agreement by parties in a collective bargaining agreement to arbitrate disputes is "(a) major factor in achieving industrial peace.... (A)rbitration is the substitute for industrial strife." Steelworkers Trilogy, 363 U.S. at 578, 80 S.Ct. at 1350.
 
 
 20
 (3) The Successorship Doctrine is Inapplicable
 
 
 21
 The district court incorrectly relied on the successorship line of cases. See Howard Johnson Co. v. Hotel Employees, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); Golden State Bottling Co. v. NLRB, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); NLRB v. Burns Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); NLRB v. Security-Columbian Banknote Co., 541 F.2d 135 (3d Cir. 1976). Jurisdiction in the successorship cases is grounded on section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1976).
 
 
 22
 The Supreme Court has created the successorship doctrine under which a court may impose on a successor employer certain legal obligations of its predecessor.[9] A successor employer has been described as one who "has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations...." Golden State Bottling Co., 414 U.S. at 184, 92 S.Ct. at 425. The duties imposed on a successor employer under the doctrine have included the obligation to recognize and bargain with a union, Burns Security Services, supra, to honor unfair labor practice awards issued against the predecessor employer, Golden State Bottling Co., supra, and to submit to arbitration, John Wiley & Sons, supra. Before imposing a duty on a successor employer, a court must consider the particular facts of each case.[10] Duties imposed by a court under the successorship doctrine should be limited to those which "may have been fairly within the reasonable expectations of the parties." Howard Johnson Co., 417 U.S. at 257, 94 S.Ct. at 2241. They should not be "something imposed from without, not reasonably to be found in the particular bargaining agreement and the acts of the parties involved." John Wiley & Sons, 376 U.S. at 551, 84 S.Ct. at 915. The successorship doctrine simply allows the court to imply certain contractual duties from the predecessor's collective bargaining agreement and impose them on the successor.
 
 
 23
 The district court unnecessarily and unjustifiably interfered in the present dispute when it imposed from without an implied duty on Mitchell. Instead, the district court should have disposed of the dispute by simply recognizing the duty to arbitrate, a duty expressly agreed to by both parties. In a situation where the enforcement of an expressly agreed to provision will resolve the dispute, it seems inappropriate for the court to go further and impose implied duties. There may be instances in which an employer may expressly assume the collective bargaining agreement of its predecessor and yet the court will nonetheless need to utilize the successorship doctrine. That situation is not presented here. We need not, and do not, hold that the successorship doctrine is inapplicable to all cases where the employer expressly assumes his predecessor's collective bargaining agreement. Under the facts of this case, where enforcement of the expressly assumed arbitration clause provides an appropriate means of resolving the dispute, that means should be used. The district court, therefore, should not have relied on the successorship line of cases.
 
 
 24
 The most persuasive case supporting the district court's application of the successorship doctrine, Golden State Bottling Co., supra, is not controlling. In Golden State Bottling Co., the Court enforced an NLRB order against a successor employer to remedy an unfair labor practice committed by the predecessor employer. That order could be equated to the arbitration award issued in the present case. The unfair labor practice order, however, included a successorship clause, making the order binding on all successors and assigns of the employer. No such clause can be found in JAC 1108. In addition, the successor employer in Golden State Bottling Co. was shown to have known of the order. Plaintiffs have not demonstrated that Mitchell knew of JAC 1108. Finally, arbitration was not a factor in Golden State Bottling Co., as there was no collective bargaining agreement between the parties in that case.
 
 
 25
 Our determination that this dispute should be decided by the arbitrator furthers at least two of the federal labor policies expressed in the successorship cases. First, the Supreme Court has demonstrated a reluctance to impose specific duties on the new employer under the successorship doctrine. Howard Johnson Co., supra (no implied duty to arbitrate); Burns Security Services, supra (no implied duty to assume predecessor's obligations under a collective bargaining agreement). See also Bartenders & Culinary Workers v. Howard Johnson Co., 535 F.2d 1160 (9th Cir. 1976). This reluctance stems from a belief that such an imposition "may discourage and inhibit the transfer of capital." Burns Security Services, 406 U.S. at 288, 92 S.Ct. at 1582. As emphasized in Burns, "a potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force, ... and nature of supervision." Id. at 287-88, 92 S.Ct. at 1582. Our decision here is consistent with this reluctance to judicially impose unassumed obligations on the new employer.[11]
 
 
 26
 Second, as discussed above, arbitration is the preferred method of resolving labor disputes. This policy is emphasized in the one successorship case in which the Supreme Court imposed an implied duty on a successor employer. John Wiley & Sons, supra. In Wiley, the new employer had not assumed its predecessor's collective bargaining agreement after a merger. Nevertheless, the Court affirmed an order to arbitrate issued against the successor employer. The order resulted from the successor employer's duty to arbitrate, a duty implied from the predecessor's collective bargaining agreement. We have not found any cases other than Wiley in which the Court has upheld an order requiring a new employer to comply with the substantive terms of its predecessor's labor contract. Howard Johnson Co., supra; Burns Security Services, supra. The decision in Wiley to order arbitration rested largely on "the central role of arbitration in effectuating national labor policy." John Wiley & Sons, 376 U.S. at 549, 84 S.Ct. at 914. Indeed, some commentators have suggested that the Court may be unwilling to impose anything more than a simple duty to arbitrate. Krupman & Kaplan, The Stock Purchaser After Burns: Must He Buy the Union Contract?, 31 Labor L.J. 328, 334 (1980). Imposing an arbitration award against an employer would go far beyond what has previously been accomplished under the successorship doctrine. Our decision to have the district court stay proceedings pending arbitration is consistent with the preference for arbitration emphasized in Wiley.
 
 Conclusion
 
 27
 A statement of the holding in this case must, of necessity, reflect the unique circumstances present here. We hold that here the successor employer expressly assumed a collective bargaining agreement which contained a broad arbitration clause and that, under the circumstances of this case, an arbitration award issued against the predecessor employer is not enforceable by a court against the new employer prior to arbitration of the controversy. Therefore, the judgment of the district court will be vacated and the case remanded to that court with a direction to stay the proceedings pending arbitration.[12]
 
 
 
 [1]
 This case was assigned initially to Senior Judge Miller, who filed an opinion on July 24, 1975, in support of his conclusion that the application for a preliminary injunction should be denied. On February 28, 1980, Judge Bloch filed Findings of Fact, Conclusions of Law and 15 judgments in favor of plaintiffs. Judge Bloch's final decision is on appeal here. Because Judge Bloch relied on Judge Miller's opinion, both opinions are discussed in this decision
 
 
 [2]
 The plaintiffs also requested that the court enjoin the grievance procedure previously initiated by the Union. We assume, because the Union is now a plaintiff and no longer a defendant, that the grievance was withdrawn. Plaintiffs' request for a preliminary injunction was denied. See note 1 above
 
 
 [3]
 Neither party raised this issue on appeal. We inquire, as we must, into the question of the jurisdiction of the district court. Pharmadyne Laboratories, Inc. v. Kennedy, 596 F.2d 568, 570 n. 3 (3d Cir. 1979); In re Trimble Co., 479 F.2d 103, 110 (3d Cir. 1973). See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908)
 
 
 [4]
 9 U.S.C. § 3 provides:
 "Stay of proceedings where issue therein referable to arbitration
 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
 As indicated in note 2, the defendant is apparently not in default in proceeding with the arbitration, since it was plaintiffs who sought court action to delay use of the grievance procedure in the collective bargaining contract.
 
 
 [5]
 Mitchell is in the unusual position of an employer who wants to force arbitration rather than go to court. Generally, it is the union which seeks arbitration. Krupman & Kaplan, The Stock Purchaser After Burns: Must He Buy the Union Contract?, 31 Labor L.J. 328, 332 (1980)
 
 
 [6]
 It is for the arbitrator, and not the court, to decide whether the question or issue presented before an arbitrator is the same issue previously resolved in an earlier arbitration. Local 103 of Int'l Union of Elec., R & M Wkrs. v. RCA Corp., 516 F.2d 1336 (3d Cir. 1975)
 
 
 [7]
 Article VIII of that agreement mandates that "(a)ll ... disputes involving any controversy, complaint, dispute, or misunderstanding arising as to the meaning, application or observance of any provisions of this Agreement shall be handled in the manner hereinafter set forth." The plaintiffs, as members of the Union, were clearly bound by this clause. See Smith v. Evening News Assn., 371 U.S. 195, n. 1, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)
 
 
 [8]
 Mitchell argued on appeal for the first time that the award was vague and thus damages could not be determined by the court. Hart v. Overseas Nat'l Airways, Inc., 541 F.2d 386 (3d Cir. 1976). This argument misses the point. The award is not vague as to Martin. Martin was required not to increase his truck fleet by more than five trucks per year, thereby limiting Martin to 24 or 29 company-owned trucks. It apparently conceded that Mitchell now performs all of Bessemer's cement hauling, whereas Martin only did approximately half
 
 
 [9]
 Recent commentaries include Krupman & Kaplan, The Stock Purchaser After Burns: Must He Buy the Union Contract?, 31 Labor L.J. 328 (1980); The Successor Employer's Obligation to Bargain: Current Problems in the Presumption of a Union's Majority Status, 1979 B.Y.L.Rev. 99 (1979)
 
 
 [10]
 "But the real question in each of these 'successorship' cases is, on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative? The answer to this inquiry requires analysis of the interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each case and the particular legal obligation which is at issue, whether it be the duty to recognize and bargain with the union, the duty to remedy unfair labor practices, the duty to arbitrate, etc. There is, and can be, no single definition of 'successor' which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others. See Golden State Bottling Co. v. NLRB, 414 U.S. 168, 181, 94 S.Ct. 414, 423, 32 L.Ed.2d 388 (1973); International Ass'n of Machinists v. NLRB, 134 U.S.App.D.C. 239, 244, 414 F.2d 1135, 1140 (1969) (Leventhal, J., concurring); Goldberg, The Labor Law Obligations of a Successor Employer, 63 Nw.U.L.Rev. 735 (1969); Comment, Contractual Successorship: The Impact of Burns, 40 U.Chi.L.Rev. 617, 619 n. 10 (1973)
 "Howard Johnson Co., 417 U.S. at 262-63 n. 9, 94 S.Ct. at 2243-2244.
 
 
 [11]
 Clearly, under the holding in Burns, Mitchell did not have to assume Martin's collective bargaining agreements. Had Mitchell read the agreement before promising to be bound by it, this entire dispute might have been avoided
 
 
 [12]
 We have not found a request by Mitchell that the court order arbitration. See page 264 above