812 F.2d 1400
 22 Fed. R. Evid. Serv. 704
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Antonio CIPOLLONE, Individually and as Executor of the
Estate of Rose D. Cipollone, Plaintiff,
v.
LIGGETT GROUP, INC., a Delaware Corporation, Philip Morris,
Incorporated, a Virginia Corporation, Loews
Theatres, Inc., a New York Corporation,
Defendant-Appellees
and
Otis R. Bowen, Secretary, Department of Health and Human
Services, Appellant.
Antonio CIPOLLONE, Individually, and as Executor of the
Estate of Rose D. Cipollone, Plaintiff-Appellant,
v.
LIGGETT GROUP, INC., a Delaware Corporation, Philip Morris,
Incorporated, a Virginia Corporation, Loews
Theatres, Inc., a New York Corporation,
Defendant-Appellees.
 Nos. 86-1198, 86-1223.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 11, 1986.
Decided Feb. 13, 1987.
 
 Before HALL, PHILLIPS and SPROUSE, Circuit Judges
 Douglas Neal Letter, Appellate Staff, Civil Division, Department of Justice (Richard K. Willard, Assistant Attorney General, Breckinridge L. Willcox, United States Attorney, Leonard Schaitman, Nicholas S. Zepros on brief) for Appellants.
 Peter T. Grossi, Jr. (Marc S. Firestone, Randal M. Shaheen, Arnold & Porter on brief) for appellees.
 PER CURIAM:
 
 
 1
 The Secretary of Health and Human Services and Antonio Cipollone here appeal an order by the United States District Court for the District of Maryland granting a motion by Liggett Group, Inc. (Liggett), to compel production of subpoenaed documents in the possession of the Office on Smoking and Health (OSH). The Order required OSH to disclose copies of "[a]ll documents constituting, in whole or in part, drafts or revisions of drafts of any section, chapter, or part of the Surgeon General [Annual] Reports [on smoking]" and "[a]ll documents constituting, recording, or concerning comments on, or criticisms of, or suggested revisions of any draft of any section, chapter or part of the Surgeon General [Annual] Reports ... including but not limited to comments, criticisms, or suggested revisions submitted or otherwise communicated by peer reviewers, senior reviewers, or 'VIP' reviewers." We conclude that the district court evaluated Liggett's discovery request and the government's objections correctly, and properly concluded that Liggett's need for the documents outweighed the government's interest in maintaining their secrecy. We affirm.
 
 
 2
 * Liggett made its Rule 45 motion in response to a lawsuit brought in United States District Court in New Jersey by appellant Cipollone. After Cipollone indicated his intention to seek admission of the Reports to prove the health risks of smoking, the addictive nature of tobacco, the defectiveness of cigarettes, and the industry's awareness of these problems, Liggett sought the disputed material to attack the reliability, and thus admissibility, of the Report.
 
 
 3
 The Report is issued pursuant to the Cigarette Labeling and Advertising Act, which requires OSH to provide Congress with "current information on the health consequences of smoking." 15 U.S.C. Sec. 1337(a). Seventeen such reports have appeared since 1965; those appearing between 1979 and 1984 are covered by the Order. The Reports are produced by a fairly elaborate consultative process of the sort often found with scientific reports: authors are hired to write selected monographs which ultimately appear as chapters, drafts are written and reviewed by outside "peer reviewers," revised drafts are written, revisions are again reviewed, and so on. The final product appears as the Annual Report, which is designed to inform congressional policies on smoking and tobacco.
 
 
 4
 When Liggett sought production of the documents, the government asserted the so-called "deliberative process privilege" against disclosure of documents generated during the formulation of official policy. The district court concluded that Liggett's particularized need for the documents outweighed the government's de minimis interest in nondisclosure "regardless of whether the subpoenaed documents fall within the deliberative process exemption." This appeal followed.
 
 II
 
 5
 The courts have frequently cited three interrelated reasons why some deliberative agency communications should be shielded from disclosure. First, "[the deliberative process privilege] serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C.Cir.1980). Second, the privilege "protect[s] against premature disclosure of proposed policies before they have been finally formulated or adopted." Id. Third, the privilege "protect[s] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." Id.
 
 
 6
 All three of these purposes look not to protection of the documents but, rather, of the deliberative process itself. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). It follows that each assertion of the privilege must be checked against the details of the deliberative process and the role of the documents to that process. See Renegotiation Board v. Grumman Aircraft Engineering Corp., 421 U.S. 168 (1975). In part because the strength of the government's interest varies with each "deliberative process," and because the privilege is only qualified, the case law has developed incrementally and, perhaps, inconsistently. As the Supreme Court noted in an early case construing the Freedom of Information Act, drawing lines "between what may be withheld and what must be disclosed is not without difficulties" since "the rules governing discovery in such litigation have remained uncertain from the very beginnings of the Republic." EPA v. Mink, 410 U.S. 73, 86 (1973). As Judge Friendly noted, this is a "masterpiece of understatement." Lead Industries Association v. OSHA, 610 F.2d 70, 82 (2d Cir.1979).
 
 
 7
 As the district court observed, it is not clear that the requested materials at issue here even qualify for the "deliberative process privilege." One of the rudimentary black letter rules is that while the privilege covers "opinions" it does not cover "facts." This crude distinction predates the FOIA cases which have recently stimulated discussion of the privilege, see Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 327 (D.D.C.1966), and appeared in the Supreme Court's first interpretation of the FOIA. See Mink, 410 U.S. at 89. One possible corollary of the fact/opinion distinction is that "informational dialogue" such as that between the scientists who collaborated on the Annual Reports is not covered by the privilege at all. The Sixth Circuit reached such a conclusion when it held that documents relating to the FDA's denial of a new drug application, including the "opinions" of experts who did not actually "make policy," were not privileged. Parke, Davis & Co. v. Califano, 623 F.2d 1 (6th Cir.1980).
 
 
 8
 As the district court realized, however, there is no need here to decide the rather abstract question of whether the deliberative process privilege applies to this kind of material. When a party to a separate lawsuit seeks agency materials, the validity of the privilege "depends ... upon a balancing of the public interest in nondisclosure with the need for the information as evidence." Dowd v. Calabrese, 101 F.R.D. 427, 431 (D.D.C.1984). In striking this balance, the common law of discovery developed a number of factors for the court to consider, including: (1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." FTC v. Warner Communications, Inc., 742 F.2d 1156, 1161 (9th Cir.1984). While the last factor obviously requires a consideration of the policies underlying the privilege, it does so expressly in the context of weighing the public interest in nondisclosure of the particular materials at issue.
 
 
 9
 As the district court observed, Liggett demonstrated a compelling need for the materials in its litigation with Cipollone, and one that could not be satisfied in other ways. Liggett offered to bear the expense of production and agreed that the materials would not be released to the public under a protective order already entered in the New Jersey litigation. The government offered only conclusory allegations concerning any likely repercussions to any "deliberative process" involved in preparing the Annual Reports, and its assertion that disclosure would chill frank discussion by future participants in the Reports was undermined by the prior disclosure of all the documents underlying the 1964 Surgeon General's Report.
 
 
 10
 We agree with the district court that the government's submissions reveal an interest in nondisclosure which is "de minimis at best." We affirm.
 
 
 11
 AFFIRMED.